BEARCE *versus* FOSSETT *&* als.

Generally, the notice for calling a town meeting is to be given by posting a copy of the selectmen's warrant "in some public and conspicuous place" in the town.

An officer's return showing that he posted the notice in a "*public*" place, without saying in a "*public and conspicuous*" place, is insufficient.

At a meeting, thus insufficiently called, no officer can be legally chosen.

A person elected at such a meeting, though sworn into his office, can draw, from such an election, no justification for acts done under color of the office.

Where one, justifying as a town officer, has read the record of his election at a meeting of the town, it is competent for the other party to show the illegality of the election, by reading from the record a copy of the officer's return upon the selectmen's warrant ordering the meeting to be called.

The Act of 1826, regulating the alewive fishery in Bristol, repealed all the acts then in force on the same subject, so far as operative in that town.

Under that Act, the town was annually to choose a fish committee, whose right and duty it should be to keep open, in the dams upon the stream, proper and sufficient sluice-ways for the passage of alewives.

Since that Act no power can reside in any persons, except the fish committee, to adjudicate upon the sufficiency of any sluice-way, or to open any sluice-way in another person's dam, or to abate any dam as a nuisance for the absence or the insufficiency of a sluice-way in that town.

ON EXCEPTIONS from *Nisi Prius,* SHEPLEY, C. J. presiding.

TRESPASS against seven defendants for an injury done to the plaintiff's dam across a stream in Bristol, by making an opening in it, through which fish might pass.

The defendants, under appropriate brief statements, justified, alleging that three of their number had been duly chosen by the town of Bristol, a fish committee, and that the acts, done by them, and the other defendants acting under them, in opening the plaintiff's dam, were done in the rightful discharge of the duties of such fish committee.

The defendants showed from the records of the town the choice of said three persons as a fish committee, on March 3, 1845, and that they accepted the office, and took the requisite oath.

They were chosen under the Act of 1826, "regulating the alewive fishery in Bristol."

To show that the town meeting, at which said choice was made, was not duly notified, the plaintiff read from the same records, a copy of the return, made by the constable upon the warrant calling the meeting, which was as follows; " Bristol, March 3, 1845. By virtue of the within warrant, I have notified the inhabitants as within directed, *by posting up copies of the same in three public places* in said town, seven days before the meeting. Elisha Hatch, Constable of Bristol." The defendants objected to the reading of the copy, and called for the original return.

[The R. S. c. 5, § 6, provides that town meetings shall be notified by posting up an attested copy of the warrant *in some public and conspicuous place* in the town, seven days before the meeting, unless the town appoint, by vote in legal meeting, a different mode.]

The Judge ruled that the meeting was not legally called or legally holden, and that the said three defendants were not a legal fish committee.

The defendants called the attention of the Court to the Provincial Statute of 8 Ann, c. 4 ; and also to the provisions of an Act passed May 1, 1798, "for the preservation of fish in the counties of Cumberland and Lincoln and for repealing all other laws for that purpose in said counties." 2 Mass. Spec. Laws, 216.

It was proved that the plaintiff's dam was built in 1836, and that " from time whereof the memory of man runneth not to the contrary, alewives had been used and wont to pass up said stream annually to the upper ponds," &c.

The defendants introduced evidence tending to prove that the fish way in the plaintiff's dam was not a sufficient passage way for the alewives.

Whereupon they contended that the dam was a nuisance, which any inhabitant of Bristol, and especially the committee, intrusted with the fishery interest, had a right to alter, by opening in it a suitable passage way for the fish.

The Judge ruled that, if the Act of Anne and that of 1798 had been in force up to 1826, they were repealed by the statute of that year, so far as relates to the town of Bristol, and that the only question for the jury was, whether the defendants had committed the acts complained of, and if so, what was the amount of damage. The verdict was for the plaintiff.

To the foregoing ruling the defendants excepted.

*M. H. Smith*, for the defendants.

The plaintiff should not have been permitted to read as evidence the *copy* of the constable's return from the town books, the defendants objecting. The records are made by the clerk, his duty is to record *votes*. R. S. c. 5, § 12.

It is not his duty to record the constable's return, and if he does so, it does not make it a part of the record, any more than his copying any other writing into the town record, would make such copy evidence as a part of the record. If the plaintiff wished to put in the constable's return as evidence, he should have produced the best evidence, which was the original, unless it was lost, and such loss is not pretended.

The dam was a "common nuisance" by the provisions of Provincial statute 8 Anne, c. 4.

This statute is yet in force, and an indictment will lie on it, the special remedy provided by the statute being cumulative. *Commonwealth* v. *Ruggles*, 10 Mass. 391.

The dam was also a nuisance by the provisions of the statute of 1798, for the preservation of fish in Lincoln and Cumberland counties.

The dam being a nuisance, the defendants, citizens of Bristol, and interested in the fishery, had a right to open in it a passage for fish. The Judge erred in ruling that the Act of 1826, regulating the alewive fishery in Bristol, repealed those Acts. That Act only repeals Acts inconsistent with itself, which these Acts are not. But if this ruling be correct, and if the rights of the parties in the case at bar, are to be determined by the provisions of the Act of 1826, the defendants

contend that, by the provisions of that Act, they being citizens of Bristol, and interested in the fishery, had a right to open in the dam, a suitable passage way for alewives at the time it was opened, provided it was proved, that said dam had been erected after the passage of said Act, without leaving a sufficient sluice or passage way for alewives through the same as prescribed in said Act, and these facts we offered to prove.

By the provisions of said Act, no person shall, after the passage thereof, erect any dam on the said river, without leaving such a sluice or passage way under *penalty* of fifty dollars. "*A penalty implies a prohibition, although there are no prohibiting words in the statute.*" HOLT, C. J., in *Bartlett* v. *Vinor*, as quoted in *Wheeler* v. *Russell*, 17 Mass. 262. And besides this, the language of the statute of 1826 is prohibitory.

The plaintiff, having built his dam in violation of the statute, cannot sustain this action for the acts done to it, any more than he could sustain an action on a contract made in violation of a statute. *Wheeler* v. *Russell*, 17 Mass. 258, and cases there cited; *Langton* v. *Haynes*, 1 Maule & Selwyn, 593; *Towle* v. *Larrabee*, 26 Maine, 464; *Marck* v. *Abel*, 3 B. & P. 35; *Holman* v. *Johnson*, Cowper, 343; *Wales* v. *Stetson*, 2 Mass. 148.

*Ruggles & Gould*, for the defendants.

APPLETON, J. — A warrant for a town meeting, duly issued by the competent authorities, and a return showing that the inhabitants have been notified in conformity with the provisions of law, by one duly authorized, are essential preliminaries to a legal town meeting. They are to be returned and preserved among the archives of the town. It is the duty of the town clerk to record the doings of the town at its regular meetings, and proof of these prerequisites is indispensable to the validity of its proceedings. Their removal would be inconvenient, and they would seem to fall within the rule, "that every document of a public nature, which there would ,

Bearce *v.* Fossett.

be an inconvenience in removing, and which the party has a right to inspect, may be proved by a duly authenticated copy." 1 Greenl. Ev. § 484. The clerk is made by statute a certifying officer.

But however that may be, the defendants claiming to act as officers of the town, were bound to show the legality of the meeting at which they were elected, as. if that was not a legal meeting, they hold no official position. If then the warrant and return were not in the case, no authority whatever would appear for holding the meeting. The record being received, shows the notice which was given. The defendants therefore were chosen at a meeting either not notified, or it was notified in the manner proved. If there was no notice, there could have been no legal choice. If there was such notice as is shown to have been given, then it is decided in *Bearce* v. *Fossett*, 29 Maine, 523, that the meeting at which the alleged choice of the defendants was made, was not legally notified. The defendants could then in no way have been injured by the admission of the copy of the officer's return.

The defendants consequently are to be regarded only as citizens of Bristol, and can have no greater rights than the other inhabitants of that town, and their justification must entirely depend upon their rights as such.

It is insisted in the defence that the dam for an injury to which, this action is brought, is a nuisance by the provisions of the Provincial statute, 8 Anne, c. 4, and that the defendants might rightfully abate it. The abatement of public nuisances by individuals is not to be encouraged. The rights of citizens are best protected and those of the public best preserved through the ordinary action of judicial tribunals and that of the constituted authorities. In *Commonwealth* v. *Ruggles*, 10 Mass. 391, this statute of Anne is said to be in force. But the offence in that case was committed in the county of Middlesex. The authority of that case cannot apply. The special Act of March 1, 1798, is entitled " an Act for the preservation of the fish called salmon, &c. within the counties of Lincoln and Cumberland and for repealing all other laws heretofore

made for that purpose so far as respects their operation in said counties." By § 14 of the same Act, it is enacted " that all laws heretofore made for the preservation of said fish, so far as respects the counties of Lincoln and Cumberland, be and hereby are repealed." It is immaterial to consider the effect of the statute of Anne, as in those counties its operation has long since ceased.

A more material question is, whether the Act of March 1, 1798, is still in force, or whether it has been repealed by the Act of March 4, 1826, entitled " an Act to regulate the alewive fishery in the town of Bristol." The Act of 1798 was more extensive in its territorial jurisdiction than that of 1826. The general object of both was for the preservation of fish, but the penalties attached to violations of these statutes and the modes of procedure to enforce obedience, differ most essentially. The penalty in the first Act was from fifty to two hundred dollars. It is provided that " the dam or obstruction shall be considered and adjudged a nuisance and be abated as such." The fishwardens are to have no active agency except as prosecuting officers. They can only examine, inspect and give information of such breaches of the Act as may occur, and enforce the statute requirements by information or action of debt. The statute of 1826 limits the penalty to fifty dollars, gives no authority for the abatement of the dam or obstruction, and provides for the appointment of a committee, whose duty it shall be " to cause to be kept open" good and sufficient sluice-ways for the passage of fish through the same. By the eighth section of the latter Act " all Acts or parts of Acts inconsistent with the provisions of this Act" are repealed. Both Acts relate to the same subject matter, and the latter must be regarded as a repeal of all prior legislation inconsistent with its provisions. The town of Bristol is withdrawn from the operation of the Act of 1798.

The rights of the parties depend upon the general laws of the State as to mills and the special Act of 1826. The rights of mill owners are to be regarded, and the fisheries are to be protected. Existing laws are to be so construed, if possible,

that the rights of both may coëxist, without giving precedence to either.    The rights given to mill owners, are not to be considered as repealed by construction, unless such construction be necessary and unavoidable.    Indeed, by necessary implication, the special Act of 1826 authorizes the erection of mills.

In determining the construction of this Act, a comparison of its provisions with preceding Acts may be of importance so far as, by its omissions or additions, it may afford indications of legislative purpose.    In 1798 the fisheries were a paramount interest.    Not merely were heavy penalties imposed, but the right to abate was specially given.    No power to act upon the premises by any change or alteration is granted.    In the latter Act individuals are appointed whose duty it is to cause to be kept open proper and sufficient sluiceways.    A quasi judicial power is given to the committee appointed under the Act to determine when the sluice-ways are insufficient, and if not sufficient, executive power is conferred to cause them to be kept open, and for that purpose they may pass over the lands of any individuals in any part of said town without being deemed trespassers.    " The whole subject is entrusted to their judgment and discretion, excepting where the town by a corporate vote limit or restrain their exercise.    It is for them to determine whether the sluice-ways are good and sufficient.    The statute does not contemplate that the question of their goodness and sufficiency shall be settled by any other."    *Fossett* v. *Bearce*, 27 Maine, 117.    The dam was to remain, but the public had the power of enforcing good and sufficient sluice-ways by the punitive force of penal suits or through the action of the committee, if the desired object could in no other way be obtained.    All this is entirely inconsistent with the right set up, that individuals may with a strong hand, and without the intervention of the committee, abate all such erections as may in any way interfere with the free passage of fish, regardless of the rights of their owners.

" It is plain," says PARKER, C. J., in *Commonwealth* v.

*Chapin*, 5 Pick. 199, " that the mere erecting or continuing a dam whereby fish may be obstructed, is no longer an offence, for that would be committed by any erection however necessary for the profitable use of the fishery. The offence consists only in having a dam without providing a convenient passage for the fish during two or three months in the year, and the remedy, when this requisition is not observed, is totally different from that which exists at common law for a nuisance. Instead of abating a dam, which is found to be deficient, the statute provides a pecuniary mulct and gives power to certain municipal officers to supervise the public interests and see to the execution of the law. It follows, we think, clearly, that an indictment as at common law for a nuisance cannot be maintained."

*Exceptions overruled and judgment on the verdict.*

TENNEY, HOWARD and RICE, J. J., concurred.